Back on the record. Our next and last case of the day is La Hart v. Sunoco Pipeline et al. Numbers 25-2152, 25-2551, and 25-8027. And Castle, we'll hear from you. Thanks. Good morning, Your Honors. Brian Killian for the appellants. I'm going to argue the Class and my partner, Ms. Laura McNally, will argue the separate and distinct issues under the Pipeline Safety Act. Terrific. I'd like to reserve two minutes of my time for rebuttal. That'd be great, but it's going to be for your whole side, okay? I'm not going to have you each do two minutes or one minute. So one of you is going to do both, the entirety for your client, okay? Okay. Is that all right? Okay. We'll do that, Your Honor. Well, then I'll just dive right in because we don't have a lot of time on the clock with jurisdiction issues. Great. I think it's undisputed that this court may exercise discretionary jurisdiction under Section 1453C because we filed the petition promptly. Okay. And that is a path through the appellate jurisdiction ticket if the court would like to take that path. So we're not going to talk about direct. I'm happy to discuss it. I think discussion would be great. Okay. I want to get to the merits, but I'm happy to spend time on this other issue as well, too. I agree. But the better view, and we agree, is that the court must hear this appeal under Section 1291. Right now, four courts of appeals have held that local controversy remands are appealable as of right under Section 1291. And I point out that four other courts of appeals, while they haven't addressed the jurisdictional question in the context of appellate jurisdiction, have agreed with the fundamental premise that a remand on local controversy grounds is not a remand because of a defect in removal. It's not a remand because of a lack of subject matter jurisdiction, but they have all held that it is a remand based on abstention. So that gets us to eight of the circuits that have addressed the key question that's relevant for appellate jurisdiction under 1291. So given your time, can I focus you right on PowerX right away? Yeah. I think PowerX... Go ahead. You have a question. I was just going to say that one of the things that they point out here is the line between misclassifying and misapplying is a very fine one. Yes. And in this case, I take it your argument to be that this is misclassification and that this is an abstention, not subject matter jurisdiction, notwithstanding the ways those courts of appeals that you're citing have held and notwithstanding the fact that district court identified this as subject matter jurisdiction. So our position, Your Honor, is that PowerX isn't relevant in this particular case because PowerX provides a rule for when the appellant is trying to get around 1447D's jurisdictional bar by arguing that while the judge said I'm remanding on ground A, the judge actually remanded on ground B. And so in that scenario where there's a dispute over what was in fact the ground which in PowerX came up because the appellant was contending that the remand based on sovereign immunity was so obviously wrong that it really must have been a remand based on 1367C's discretionary basis. It's in that context where Justice Scalia writing for the court says, we're going to take the district court at its word for the basis for the remand unless there's some really strong indications elsewhere that in fact the judge was just dressing a non-jurisdictional ground in jurisdictional clothing. So since in this case, the parties agree that Judge Perez remanded on local controversy grounds, the PowerX rule for how to sort that sort of problem out doesn't come into play. And as such, the question is squarely teed up for this court, whether a local controversy remand is abstention based. And our position is that as eight circuits have now held, it is abstention based. And under the rule of Quackenbush, that means this court may exercise and must exercise jurisdiction under 1291. What if we disagree and think that PowerX is applicable here? It's a very low bar, isn't it? In what sense, your honor? Well, the characterization of subject matter jurisdictions just has to be colorable, right? Well, if you disagree, and we strongly would urge you not to, and I could go on for quite a long time on why that's incorrect, I would say that since eight courts of appeals have looked at this and have all held this is not jurisdictional, I would say that it is not in fact colorable to characterize a remand on local controversy grounds as jurisdictional. My friend on the other side hasn't even argued that. Their whole position has been that this is a defect in removal and is not even jurisdictional. The parties didn't brief PowerX. None of the four courts that have on our way have discussed PowerX because no one has really disputed whether the remand was on local controversy grounds, which is really where PowerX comes into play. All right, so why don't you jump into it? Turning to the merits, your honor, and I can be brief on that one too, because the local controversy exception requires that the focus is on the alleged conduct of the local defendant and whether it forms a significant basis of the claims here. And that's a question of importance, like who's the target? Is this a truly important defendant? Well, here the district court and the Laharts have focused on the Pennsylvania DEP's administrative order, which names the one local defendant, R&M. Well, I will say that as a matter of law, that cannot sustain application of the local controversy exception. And the eighth circuit dealt with this exactly in the Kitchen versus Bridgeton landfill case, which we cite in our briefs. Kitchen involved a letter from the responsible. And the eighth circuit said that the local controversy requirement looks at the conduct and simply being named in a letter isn't conduct. And if the letter then doesn't go on and identify any alleged conduct, you can't satisfy the local controversy exception. That is the position that the Laharts are in here. Their complaint does not allege any conduct of R&M and R&M's inclusion in the PA Department of Environmental Protection's administrative order also doesn't identify any conduct of R&M. Why wasn't that appealed? It was objected to, your honor, in a letter that we sent afterwards. I would say that this is like a situation where a district judge makes a clerical error. And rather than immediately appealing that to this court, we wrote a letter, which is in the appendix. And in that letter, we point out that we think the court, excuse me, the agency made an error and that they meant to name energy transfer parent, not energy transfer R&M. Why wasn't it in the letter directly to the agency and then proceeded a pace? Sunoco Pipeline and energy transfer were the ones that were accepting responsibility in doing the work with the agency. And so they pointed out the error and then proceeded. And that's what we believe culminated in the July 14th letter, which the district court didn't have because she ruled beforehand where the Department of Environmental Protection said that R&M was not the intended target of the initial administrative order. There is an appeal mechanism. Is that right? In other words, you could have appealed it. Instead, the decision was made to send an email. It was more than an email. It was a lengthy letter responding to all ports. We went paragraph by paragraph through the administrative order. There is an internal appeal mechanism that could have been available, but client be stopped from making this argument at all. I mean, you sat on your client, sat on their rights, did not appeal, now is looking to do something different. And a party included in a judgment is a little more than a clerical error. I think a clerical error is a comma. Well, this is not a judgment. It's an order that says that you're on notice that there's going to be further remediation activities. But I want to point out, Judge Chigar, is that the question of whether the error is right or wrong is a secondary question, because even if the letter is correct, then still the Eighth Circuit holds in kitchen as a matter of law, a letter is insufficient to apply the local controversy exception where the letter or the order does not address the key question. Is there alleged conduct of that defendant? And there is nothing in that letter that talks about any activity of R&M. That's why we think it's an error among other things that were factually misstated. But put that aside, there is no conduct and you can't the local controversy exception without complaint or documents incorporated in the complaint that talk about that conduct and explain why it's significant. So I think the court doesn't have to get into the error issue and can just rule as a matter of law as the Eighth Circuit did in the kitchen case. And by the way, it's K-I-T-C-H-I-N, kitchen. I think we'll hear from your friend now on the PSA part. Okay. How are we doing this? I think the clerk advised- However you'd like, your honor. Why don't we have your friend go on PSA issue and then we'll have the appellees respond to everything. How about that? Okay. Thank you. Okay. Thank you. Okay. Good morning, your honors. May it please the court. I'm Laura McNally. And I take it that I don't have a separate rebuttal time. So I'll just dive right in. Okay. So I represent Sunoco Pipeline and the appeal of the district court's order denying the TRO and preliminary injunction in the Pipeline Safety Act case. In that action, Sunoco Pipeline seeks to enjoin homeowners in Bucks County from using state court proceedings to shut down an interstate pipeline that starts out in Delaware County and provides jet fuel to the New York airport. Now, these homeowners have asked the state court to shut down that pipeline unless and until they are satisfied that it can safely operate. The district court did not actually reach the merits of Sunoco Pipeline's claim that this request violates the Pipeline Safety Act and instead concluded that it lacked jurisdiction and that the anti-injunction act barred the claim. Both of those conclusions were an error and this court should vacate the order and remand for further proceedings. So we're talking about the pre-suit notice requirement. I think that's, isn't that what we're talking about here? The 60-day notice requirement? So that's an alternative basis that the appellees have offered for. Well, maybe you could deal with that. Sure. So the 60-day notice requirement is found in section 60-121 and it requires 60-day notice to PHMSA and to the alleged violators. Here that notice was provided on the day that we filed suit. But it was after 60 days, right? Well, it was the, no it was not. PHMSA was well aware of everything that's been going on. PHMSA has been on the ground since day one in Upper Makefield and the complaint of my friends is that we did not wait 60 days from notifying PHMSA to file the complaint here. But here, effectively, PHMSA has been well, is and was and has been well aware of this. And other courts have found that in these circumstances, amending the complaint would solve this problem. So if we are to be remanded, we will certainly promptly amend to show that 60 days has now passed. And as I understand, you're urging us to take a less formalistic approach, I guess. Yes. Yeah. A slightly more flexible approach. And one, frankly, what's the point in putting us, we'll be back here. If we just go back, amend to say 60 days has passed, we'll be right back where we are here. And I think the Supreme Court's Halstrom decision leaves the door open for the court to find that it's not kind of a jurisdictional requirement that 60 days notice and that it did it for effects for all effects and purposes here. There's no point in making us go back, amend and find ourselves back in front of your honors. However many months from now. So turning though, I mentioned jurisdiction there. I'll touch on jurisdiction briefly for the Pipeline Safety Act appeal because the court did find that it did not have jurisdiction here. We have just stopping for one second, going back to Halstrom. I should have asked this when you said it, but I have a quote from Halstrom on page 31. It deals with you're saying flexibility. Halstrom and I'm quoting says experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of even handed administration of the law. Does that really invite flexibility? So I think Halstrom though also acknowledge that it did not decide whether the notice requirement was jurisdictional and therefore it's leaving open the door for a court to find an equitable exception, which should be applied here. SPLP had been working with PHMSA for months and we were facing expedited briefing set by the state court on a preliminary injunction and the risk that state court could enter an injunction as soon as this was a Friday that we were facing the potential that the state court could enter an injunction on Monday, which was when the expedited briefing was due there. And under these circumstances, I'd urge that an exception to the notice provision was warranted. And here again, we're now well past the 60 days. So the purpose of the notice has been, was already kind of fulfilled because PHMSA was certainly well aware of this since the end of January 2025. And, you know, we were at July 2025 when we filed this. And certainly since then 60 days has passed from when we provided that formal notice. Okay. I'll go back very briefly. Jurisdiction section 6121A1 creates a federal cause of action that's clearly providing federal question jurisdiction. I think that the then that kind of leads us to the next question on the appeal, which is whether the right of action is barred by the anti-injunction act. It is not. That question turns on whether Congress has expressly authorized the district court to enjoin the state court proceeding. The leading case on this issue is the Mitchum case. In Mitchum, the Supreme court held that a statute does not have to say on its face that the federal court can enjoin the state court. The Mitchum court said that the test is whether the statute can be given its intended scope only by a stay state court proceedings. Here, the pipeline safety act actually gets really close on its face to saying a federal court can enjoin a state court. And again, that's in section 6121A1. It says a person may bring a civil action in an appropriate district court of the United States for an injunction against another person, including the United States government and other governmental authorities to the extent permitted under the 11th amendment. Now, neither Mitchum nor the very few there's one other Supreme court case, Vendo post Mitchum and a handful of two third circuit cases have this very clear language that we have in the pipeline safety act. But ultimately, Mitchum says that you don't even need to have that clear of language. What you need is a statute that can only be given its intended scope by a stay of the state court proceedings. Here, we have the pipeline safety act. The intended scope of that act is that it's to provide for the uniform federal regulation for the safe operation of interstate pipelines, which are critical to our energy and security infrastructure. And I think that the clearest cases setting forth the purpose of the pipeline safety act are the Williams pipeline case from the district of Minnesota, and the Enbridge case from the district of Michigan. The Enbridge case is available at 813 F sub 3d 777. And both of those cases contain this very powerful language, if I could just stay for momentarily, I know I'm at the end of my time, which is as follows hazardous liquid pipelines run through 21 states and presumably through small and large plots of land belonging to vast numbers of persons, or each of these landowners entitled to demand compliance with their own safety standards, the clear congressional goal of a national standard for hazardous liquid pipeline safety would be thwarted claims for injunctive relief appear to be so repugnant to the statute that survival of such rights would in effect deprive the statute of its efficacy. So I think here with the pipeline safety act, with the language in the act itself, with the courts that have interpreted 6104 c, which is the preemption provision, it is one of these rare cases that actually do qualify for an except express exception to the anti injunction act. It's really the combination of the language in the statute, and the, you know, extreme regulatory provisioning to just the federal authorities for pipeline safety, given the importance of pipelines to our energy and transportation infrastructure. So, do you have any, I do. So, I'm sorry. So, if it's like a fed courts final. I have a child in law school is taking his fed courts final this very minute. So, you would not dispute or would you dispute that you could, if no one was interested in bringing a federal action here, that there could be a state action on pipelines, even if across state boundaries. Could you, not if it's about pipeline safety, not at all. So this is really express preemption and really this, you're saying that this provision that you just cited section 60121. If you read it in the context in the light of the purpose of the statute and the case law interpreted really is an exclusive jurisdiction statute. And it's six 6121 a one and then also 6104 C, which is the preemption provision of the Pipeline Safety Act so it's 6121 a one gets us past the anti injunction act I think kind of have to read it in the context of 6104 C because that says this authority is just for the federal government states cannot step in, in any way, a state court injunction would be repugnant to the federal grant of authority to to film that here, so Congress just didn't in that one section they didn't say exclusive but that's what they really meant. They say what they they give the power in 6121 a one for a federal court to enjoin any governmental authority within the bounds of the 11th Amendment. So, in that way they're saying the 11th Amendment is the only confines on this authority. Judge Roth, do you have anything to add? I have nothing to add. Thank you. Okay, great. Thank you, counsel. Now we'll hear from your friends. You may proceed. Good morning, your honors. May it please the court, Joseph Samuel from Berger-Montague on behalf of Appellee's Respondents, Little Hearts, and the proposed class. Because of the order that we received from the court a few days ago, I'd like to also start with PowerX. Great. And address why the of right appeal in this case was improper. So, I'd like to start with PowerX. So, PowerX  is an example of an improper. So, PowerX squarely governs the way that the district court characterized its remand in this case. Your friend says that many courts of appeals say something different. So, several courts of appeals have held that the local controversy exception is not itself jurisdictional. But we went, when we saw the court's order, we went and pulled the remand orders in the other circuits that arose to the other circuits in those cases. None of them involved the district court characterizing its remand as one for subject matter jurisdiction. It only characterized the remand as being under the local controversy exception. The district court here has a header that says subject matter jurisdiction. It expressly stated that it was remanding the case for lack of subject matter jurisdiction. And under PowerX, that characterization only needs to be colorable. And this court does not have jurisdiction here in of right appeal. There's several reasons why we think it's colorable. First of all, this circuit has never indicated whether the CAFE exceptions are jurisdictional. Only other circuits have. Additionally, if the court looks to its prior decision in Vodanichar and looks at footnote one specifically, in footnote one, this court said these exceptions are examined to determine whether a federal court has subject matter jurisdiction. So, you know, much ink has been spilled by the circuits on whether it's jurisdictional technically in the sense of, you know, can it be waived, for example. But it's more than colorable to characterize a remand that's based on a provision that says the district court shall decline to exercise jurisdiction. Congress is telling courts you don't have power to hear the case. That's exactly what happened in PowerX. So for that reason alone, we think the court does not have jurisdiction over the of right appeal. How about the discretionary appeal under 1453? Yes, Your Honor. So under 1453 C1, which we do think is the only avenue available for appeal, our position, Your Honors, is that the court should deny permission of the request to appeal. So, you know, a number of circuits have agreed on a set of factors that were first announced by the 10th Circuit in an opinion authored by now Justice Gorsuch. And we think the primary factors that govern here are that there's no important CAFE related question governed by this case. So what the parties are really asking this court to do is to just go look at its prior decisions in Kaufman, Walsh, McLaren, Vodenichar, which all have described what the significant basis prong of this exception is and just apply that prong and those decisions. So this is almost like a sui generis type pattern. Your adversary made a big point about R&M and looking at their conduct. What's your position there? So the significant basis prong looks to what is the alleged conduct against R&M. Okay. And the complaint alleges conduct against R&M. It alleges expressly that R&M is part of a corporate structure that is in charge of this pipeline, that operates this pipeline, that's part of the stream of commerce involved with running petroleum through the pipeline. So it alleges past conduct as to R&M. And also there's no reason why future conduct alleged in the complaint can't be relevant to the significant basis prong. So the proposed class here and the respondents themselves seek forward-looking relief. They seek remediation from the defendants. They seek injunctive relief, which overlaps in part with the other part of this appeal. But it's a big corporate family. Don't you have to trace it to a specific member of the corporate family who has done the conduct? Yes, Your Honor. I'm glad you asked that question because Energy Transfer has, by our count, 347 entities in its corporate family and plaintiffs named three of them. And we chose those three carefully. We chose the overall ultimate corporate parent, which is Energy Transfer LP, and the two entities that the DEP indicated in an administrative order have corporate and operational responsibility over this pipeline. But the DEP, in the subsequent filing, basically said it's one and not the other. Did it not? So, Your Honor, we didn't oppose that letter coming into the record because we do not read it as the appellants do. How do you read it? So the letter concludes with the DEP stating that it did not formally appeal the order. At that moment, it became final and binding on R&M. They then wrote a letter to the DEP asking them to clarify that this was some kind of mistake. The letter doesn't say it was a mistake. It says essentially, you know, we needed to find corporate entities that we could hold liable over the pipeline. And these are the ones we identified. Since then, on the ground, it turns out that the Sunoco Pipeline LP and Energy Transfer LP have been satisfying the obligations of the order. But they conclude with the letter by saying, we retain the right to enforce the order. It only has that right to enforce because it still exists. And so, you know, we think the administrative order, as the District Court held, satisfies the Sanabian basis prong. The District Court also made a factual finding that because of its naming in the administrative order, the DEP... What's the effect of the administrative order? The fact that they didn't appeal it on time, or at all, I guess. So that's really the core of the court's holding below, Your Honor, is that because it became final and binding, the District Court made a factual finding that it means R&M was viewed as corporately and operationally responsible for the operation of the pipeline and liable for future enforcement in terms of remediation. Did anyone make a finding that would satisfy this conduct test, if that's in fact the test? It sounds like it may have been more limited than that. Well, Your Honor, what the court really did was to say, you know, plaintiffs have the burden, and we acknowledge that, of demonstrating that the alleged conduct of the local defendant forms a significant basis of the claims. The District Court essentially found that DEP's directive to R&M to take action suggested it viewed it as operationally and corporately responsible. We also, I mean, we bring tort claims against R&M. We will seek to prove at trial that R&M is liable for negligence and other claims. And so all of that, the District Court felt was enough to meet our burden, that there was a significant basis of conduct by this defendant. And on the other hand, there was just a self-serving declaration by R&M essentially saying we're not responsible. And the District Court indicated that it can't resolve that almost like merits level of a factual dispute in favor of defendants at the remand stage. Effectively, R&M was asking the District Court to find you aren't responsible in this case. That's effectively a summary judgment finding. Did the District Court do the analysis that we prescribed under Kauffman? Yes, your honor. The court cited Kauffman. It cited it, yep. And it applied the factors that this court has announced in Kauffman. So it requires a substantive analysis comparing the local defendant's conduct alleged to the conduct of all defendants. And as it held in the next paragraph, the administrative order is enough. I mean, this is a regulatory agency that's naming this company out of, again, 347 subsidiaries in this corporate family. And plaintiffs then in turn brought tort claims against R&M, the same tort claims it brings against the other two defendants. And as instructed in Kauffman, if the same claims based on similar or the same conduct is alleged against the same defendants, then the local defendants meet the significant problem. I see my time is up, your honor. Good, thank you. Judge Roth, do you have any other questions? I have no other questions, thank you. Okay, great. Thank you, counsel. We'll hear from Mr. Hughes. Thank you, your honor. May it please the court. Jordan Hughes for the appellees. Okay. And I'll just be speaking today on the PSA questions. Your honor, this aspect of the case, the PSA case, can and should begin and end with Article III. Before I get there, I'm going to respond to a couple of points that came up in the colloquy with my friend, Ms. McNally. Okay. And we can dive right into the pre-suit notice requirement, which you brought up. Now, it's agreed, I think everyone agrees that there had not been 60 days notice at the time that this suit was filed. Appellant's case can only survive if Hallstrom is not binding and does not require dismissal at the time of the suit. Now, the posture of this case matters, your honor. This case is before this court on a denial of a TRO motion. It's undisputed that at the time of the TRO request, it could not have been granted because there are no merits to the case because the mandatory notice requirement had not been satisfied. And frankly, I mean, Hallstrom by its own terms, as your honor pointed out, is binding and does require dismissal here. Appellant relies on a single case that postdates Hallstrom, SFPP. And I'd like to talk about that. Hallstrom dealt with the Resource Conservation and Recovery Act. Does it apply to the PSA? It does. It specifically referenced the predecessor statute to the PSA, the Natural Gas Act. That's directly referenced in Hallstrom as an example of the kinds of statutes that have these notice provisions. I would also note in SFPP, the case that Appellant relies on, Appellant failed to advise this court of a very important point about that case's history. It went up on appeal to the Ninth Circuit. That decision did. That's at 274 Federal Appendix 549. And I'd be happy to submit a 28-J letter if the court requests, but this is the history of that decision. The Ninth Circuit applied Hallstrom and said that dismissal was mandatory in that case. On the basis of Hallstrom as applied to the PSA. It sounds like your friend is saying that if we were to order dismissal, they'd just start again. Is that right? Is it a dismissal of prejudice for failing to satisfy notice requirement? No, Your Honor. I mean, I suppose they can certainly file again. And I think that's one reason why this case should probably start and end with Article 3. I think this case is a good example of why gatekeeping matters, right? Because I think before we get to this analysis, we have to ask whether there's an actual injury that my clients who are private citizens are able to bring into effect, and they aren't. I would also point to that same case, actually SFPP, both the District Court case that Appellant relies on and the Ninth Circuit in affirming that dismissal. They both say there is no ability to enforce the preemption clause against private citizens. The preemption clause by its clear language only applies to state agencies, right? And that makes sense. A private citizen cannot adopt safety regulations that apply to a pipeline. My clients would probably love to, but they cannot. I would also note on the Anti-Injunction Act question, if I may. My friend brought up whether the PSA can have its intended scope, but for this power to enjoin state courts and interrupt state proceedings. I would just note that just last week, the U.S. Supreme Court sent the Enbridge case back to the Michigan state courts in a case where preemption under the PSA has been raised. And it's very clear, really throughout the case law, there is no preemption of state court proceedings. That's never been found. This is a preemption question that comes up often in pipeline litigation, even in Williams Pipe in the Minnesota case that Appellant relies on. What was preempted was a state ordinance, a local ordinance, but there was a nuisance claim in that case and that was not found to be preempted and that was allowed to proceed. That was dismissed for failure to state a claim because the court found that they couldn't prove the elements of state nuisance. But it was not found in any way to be in violation of the Pipeline Safety Act. I would also like to note the interpretation of the Act itself. It doesn't compel this at all. If we read, we read 60121A1 very differently from Appellant, but read in conjunction with 60104C, what's very clear is the 11th Amendment reference is the opposite of what Appellant says, right? It is not a waiver of state sovereign immunity. It preserves state sovereign immunity. It expressly waives the United States sovereign immunity and then it says you can sue other actors up to the limits of the 11th Amendment. What that says, and the way that it's applied, it's the way that it's come out in the Enbridge case and most other pipeline litigation. If a pipeline company wants to sue a state agency for regulations, then it does that through an ex-part young action, right? It doesn't use the PSA as a sword to sue private residents. And that really brings us to what this case is about, your honors, and why these gatekeeping principles matter. My clients are private residents. They're unlucky homeowners whose homes became the site of an environmental disaster, not of their own making, not by their own fault. And they didn't protest and they didn't rally. They did what those of us who are invested in the system of civil justice would hope they would do. They brought their claims in state court, which the PSA actually says they can do in 60121D. They brought tort claims to remedy their injuries. The PSA does not preempt a number of things, tort claims, environmental regulations, remediation, health claims, any of that. It is just about how to operate a pipeline. Your honor, if the PSA is turned into a sword that pipeline companies can use and wield to not even remove state claims from state court, but to start separate cycles of litigation against plaintiffs in a form of their choosing, just because they want to be in federal court on cases that they don't even say they have a basis to remove. I think that is an untenable situation. It really tears down our system of justice. And I would encourage the court to affirm. Thank you, counsel. We'll hear rebuttal. Thank you, your honors. I've got five points I'm going to rattle off for you. Number one, last week's Enbridge case at the Supreme Court was a different Enbridge case than the one that Ms. McNally quoted. Enbridge has three or four different lawsuits pending. They are not the same. Number two, if the court is going to pursue the PowerX line on colorability, I would encourage the court to take a look at page 233 of the PowerX decision where the Supreme Court is articulating the standard. The question is, and in that case, they're applying it. There is only one plausible explanation of what legal ground the district court actually relied upon for a remand in the present case. The question is, what is the actual ground? And your honor, Chief Judge Chigar is in the estate of Campbell case, which is although unpublished, you wrote for the court a few years ago at 732 Federal Appendix 113. Your honor had a case that was quite similar to this one, where the district judge in the very concluding line of her remand decision said, I find I lack subject matter jurisdiction to remanded. And writing for the court, I found I lack subject matter jurisdiction to remanded. And since the substance of that opinion was not jurisdiction, it was procedure. You did not give that credit. PowerX doesn't require blind fealty to a district court whose final sentence in the opinion says I lack subject matter jurisdiction. I'll also quote to the court that the 11th Circuit in the Hunter case, footnote two that we cite in our brief, deals with this exact issue, although it doesn't cite PowerX. And the Second Circuit has a very lengthy decision on this from a couple years ago, written by Judge Sullivan, which is called LaChase at 63 F Fourth 160, that deals with the question of dressing a non-jurisdictional ground quote in jurisdictional clothing. In all events under 1453 C, the court does have discretion and should exercise it because the decision below squarely conflicts with the Eighth Circuit's decision in Kitchen. Your honor has my friend on the other side about any conduct, which is really the question here. Whether we appeal the administrative order is a red herring because the order still doesn't have any conduct in it either. And that's what matters. You asked about conduct. He pointed to corporate structure. Corporate structure is not conduct. He did not cite to the court a single paragraph in his complaint that alleges any, any conduct about R and M. And so therefore the district court could not lawfully have applied the significant basis test without any conduct to put into the algorithm. So our view, your honors, is that the court should not open up a circuit split on jurisdiction. It should not open up a circuit split with the Eighth Circuit on the local controversy exception in this circumstance and should therefore reverse. Thank you, counsel. Thank you. We'll take this case under advisement and thank all counsel for their excellent argument today and briefing. Uh, I will ask the clerk to adjourn court. But before that, I just want to say if council is amenable, we'll be happy to meet you at sidebar and thank you very much.